IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS



MAY - 2 2011

Clerk, U.S. District Court
By:_____ Deputy Clerk

Paula K Goldwyn
_____
_____
_____
(Enter above the full name of Plaintiff(s))

vs.

Patrick Donahoe, USPS General
Name

475 L'Enfant Plaza, S.W.
Street and number

Washington, D.C.  20260-0010
City     State         Zip Code

(Enter above the full name and address of
Defendant in this action - list the name and address
of any additional Defendants on the back side of
this sheet.)

Case Number: 11-CV-4046-KHV/JPO
(To be assigned by Clerk)

## EMPLOYMENT DISCRIMINATION COMPLAINT

1. This employment discrimination lawsuit is based on (check only those that apply):

    ✓ Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et seq.*, for employment discrimination on the basis of race, color, religion, gender, or national origin.
    **NOTE**: *In order to bring suit in federal district court under Title VII, you must first obtain a right-to-sue letter from the Equal Employment Opportunity Commission.*

    ____ Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §§ 621, *et seq.*, for employment discrimination on the basis of age (age 40 or older).
    **NOTE**: *In order to bring suit in federal district court under the Age Discrimination in Employment Act, you must first file charges with the Equal Employment Opportunity Commission.*

    ✓ American with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12101, *et seq.*,

1

for employment discrimination on the basis of disability.
**NOTE:** *In order to bring suit in federal district court under the American with Disabilities Act, you must first obtain a right-to-sue letter from the Equal Employment Opportunity Commission.*

\_\_\_\_ Other (Describe)

_____
_____
_____

2. If you are claiming that the discriminatory conduct occurred at a different location than the address provided for Defendant, please provide the following information:
   807 5th Street, Wamego, KS  66547
   (Street Address) (City/County) (State) (Zip Code)

3. When did the discrimination occur? Please give the date or time period:
   Spring 2003 - March 2006

## ADMINISTRATIVE PROCEDURES

4. Did you file a charge of discrimination against Defendant(s) with the Kansas State Division of Human Rights or the Kansas State Commission on Human Rights?
   \_\_\_\_ Yes    Date filed: _____
   ✓ No

5. Did you file a charge of discrimination against Defendant(s) with the Equal Employment Opportunity Commission or other federal agency?
   ✓ Yes    Date filed: January 2005
   \_\_\_\_ No

6. Have you received a Notice of Right-to-Sue Letter?
   ✓ Yes \_\_\_\_ No
   If yes, please attach a copy of the letter to this complaint.

7. If you are claiming *age discrimination*, check one of the following:
   \_\_\_\_ 60 days or more have passed since I filed my charge of age discrimination with the Equal Employment Opportunity Commission.
   \_\_\_\_ fewer than 60 days have passed since I filed my charge of age discrimination with the Equal Employment Opportunity Commission.

2

## NATURE OF THE CASE

8. The conduct complained of in this lawsuit involves (check only those that apply):
   \_\_\_\_ failure to hire me
   _✓_ termination of my employment
   _✓_ failure to promote me
   _✓_ failure to accommodate my disability
   _✓_ terms and conditions of my employment differ from those of similar employees
   _✓_ retaliation
   _✓_ harassment
   \_\_\_\_ reduction in wages
   \_\_\_\_ other conduct (specify):

   Did you complain about this same conduct in your charge of discrimination?
   _✓_ Yes   \_\_\_\_ No

9. I believe that I was discriminated against because of (check all that apply):
   \_\_\_\_ my race or color, which is _____
   \_\_\_\_ my religion, which is _____
   \_\_\_\_ my national origin, which is _____
   _✓_ my gender, which is \_\_\_\_ male; _✓_ female
   _✓_ my disability or perceived disability, which is anxiety and depression
   \_\_\_\_ my age (my birth date is: _____ )
   \_\_\_\_ other: _____

   Did you state the same reason(s) in your charge of discrimination?
   _✓_ Yes   \_\_\_\_ No

10. State here, as briefly and clearly as possible, the essential facts of your claim. Describe specifically the conduct that you believe is discriminatory and describe how each defendant is involved in the conduct. Take time to organize your statement; you may use numbered paragraphs if you find it helpful. It is not necessary to make legal arguments, or to cite cases or statutes.
    Please see "Additional Information" below.

3

(Attach additional sheets as necessary).

11. The acts set forth in paragraph 10 of this complaint:
    \_\_\_\_\_ are still being committed by Defendant.
    ✓ are no longer being committed by Defendant.
    \_\_\_\_\_ may still be being committed by Defendant.

12. Plaintiff:
    \_\_\_\_\_ still works for Defendant
    ✓ no longer works for Defendant or was not hired

13. If this is a *disability-related claim*, did Defendant deny a request for a reasonable accommodation?
    ✓ Yes  \_\_\_\_\_ No
    Explain: Plaintiff (and her doctor) repeatedly asked for Plaintiff to be re-assigned away from her harassing supervisor, but all requests were denied.

## REQUEST FOR RELIEF

As relief from the allegations of discrimination as stated above, Plaintiff prays that the court grant the following relief to Plaintiff: (check any and all that apply)

\_\_\_\_\_ Defendant be directed to employ Plaintiff
✓ Defendant be directed to re-employ Plaintiff
✓ Defendant be directed to promote Plaintiff
✓ Defendant be directed to schedule & assign Plaintiff similarly to all other clerks
\_\_\_\_\_ Injunctive relief (please explain): _____
✓ Monetary damages (please explain): backpay, loss of TSP (retirement) funds, leave credits
✓ Costs and fees involved in litigating this case
✓ As additional relief to make Plaintiff whole, Plaintiff seeks: punitive damages in excess of $75,000

and such other relief as may be appropriate, including attorney's fees, if applicable.

Signed this  2nd  day of              May             , 20 11 .

*[signature]*
Signature of Plaintiff
Paula K Goldwyn
Name (Print or Type)
702 Laramie Street
Address
Manhattan, KS 66502
City State Zip Code
785.776.8095
Telephone Number

4

## DESIGNATION OF PLACE OF TRIAL

Plaintiff designates ( ☐ Wichita, ☐ Kansas City or ☑ Topeka ), Kansas as the location for the trial in this matter.   (check one location)

_____
Signature of Plaintiff

## REQUEST FOR TRIAL BY JURY

Plaintiff requests trial by jury ☑ yes ☐ no .
(check one)

_____
Signature of Plaintiff

Dated: __May 2, 2011__
(Rev. 8/07)

5



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
Office of Federal Operations
P.O. Box 77960
Washington, DC 20013

Paula K. Goldwyn,
Complainant,

v.

Patrick R. Donahoe,
Postmaster General,
United States Postal Service,
(Western Area),
Agency.

Appeal No. 0120102400

Hearing No. 560-2009-00174X

Agency No. 4E680006406

DECISION

Pursuant to 29 C.F.R. § 1614.405, the Commission accepts Complainant's appeal from the Agency's March 31, 2010 final decision concerning her equal employment opportunity (EEO) complaint alleging employment discrimination in violation of Title VII of the Civil Rights Act of 1964 (Title VII), as amended, 42 U.S.C. § 2000e et seq. and Section 501 of the Rehabilitation Act of 1973 (Rehabilitation Act), as amended, 29 U.S.C. § 791 et seq. Complainant alleged that the Agency discriminated against her on the bases of sex (female), religion (Christian), disability (anxiety and depression), and reprisal for prior protected EEO activity when she was issued a notice of removal.

BACKGROUND

At the time of events giving rise to this complaint, Complainant was employed as a part-time flexible distribution clerk at the agency's post office in Wamego, Kansas. During the period January 29, 2005 to March 23, 2005 Complainant did not report for duty. During that period, with only two exceptions, Complainant failed to contact the agency to give notice that she would not be reporting for duty. On April 21, 2005, Complainant received a Notice of Removal. After contacting an EEO Counselor, Complainant filed an administrative EEO

complaint alleging discrimination as set forth above.[1] After conducting an investigation, the agency issued a final agency decision[2] finding no discrimination.

## ANALYSIS AND FINDING

As this is an appeal from a decision issued without a hearing, pursuant to 29 C.F.R. § 1614.110(b), the agency's decision is subject to de novo review by the Commission. 29 C.F.R. § 1614.405(a). See EEOC Management Directive 110, Chapter 9, § VI.A. (November 9, 1999). (explaining that the de novo standard of review "requires that the Commission examine the record without regard to the factual and legal determinations of the previous decision maker," and that EEOC "review the documents, statements, and testimony of record, including any timely and relevant submissions of the parties, and . . . issue its decision based on the Commission's own assessment of the record and its interpretation of the law").

To prevail in a disparate treatment claim such as this, complainant must satisfy the three-part evidentiary scheme fashioned by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). He must generally establish a *prima facie* case by demonstrating that he was subjected to an adverse employment action under circumstances that would support an inference of discrimination. Furnco Construction Co. v. Waters, 438 U.S. 567, 576 (1978). The *prima facie* inquiry may be dispensed with in this case, however, since the agency has articulated legitimate and nondiscriminatory reasons for its conduct. See United States Postal Service Board of Governors v. Aikens, 460 U.S. 711, 713-17 (1983); Holley v. Department of Veterans Affairs, EEOC Request No. 05950842 (November 13, 1997). To ultimately prevail, complainant must prove, by a preponderance of the evidence, that the agency's explanation is a pretext for discrimination. Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 120 S.Ct. 2097 (2000); St. Mary's Honor Center v. Hicks, 509 U.S. 502, 519 (1993); Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 256 (1981); Holley v. Department of Veterans Affairs, EEOC Request No. 05950842 (November 13, 1997); Pavelka v. Department of the Navy, EEOC Request No. 05950351 (December 14, 1995).

Here the agency explains that Complainant was issued a notice of removal because she failed to report for duty, and repeatedly failed to notify the Agency in advance that she would not be

---

[1] The complainant also alleged that she had been discriminated against when the agency failed to pay her the full amount she had been awarded in a grievance settlement. The agency dismissed both claims. On appeal, in EEOC Appeal No. 0120070443, the Commission affirmed the dismissal of the grievance settlement claim but remanded the discriminatory removal claim for further processing.

[2] Following the investigation, at Complainant's request, the matter was assigned to an EEOC Administrative Judge (AJ) for a hearing. The AJ did not issue a decision on the merits but returned the matter to the agency for the issuance of a final agency decision.

                                           3                              0120102400

reporting for duty as she was required to do by Agency regulations. This is a legitimate, nondiscriminatory reason for the Agency's action. Complainant adduced no evidence refuting the Agency's explanation.[3] According we conclude that Complainant has failed to prove that the Agency articulated reasons are a pretext designed to conceal discriminatory animus.

After a review of the record in its entirety, including consideration of all statements submitted on appeal, it is the decision of the Equal Employment Opportunity Commission to affirm the Agency's final decision because the preponderance of the evidence of record does not establish that discrimination occurred.[4]

## STATEMENT OF RIGHTS - ON APPEAL

### RECONSIDERATION (M0610)

The Commission may, in its discretion, reconsider the decision in this case if the Complainant or the Agency submits a written request containing arguments or evidence which tend to establish that:

1. The appellate decision involved a clearly erroneous interpretation of material fact or law; or

2. The appellate decision will have a substantial impact on the policies, practices, or operations of the Agency.

Requests to reconsider, with supporting statement or brief, must be filed with the Office of Federal Operations (OFO) **within thirty (30) calendar days** of receipt of this decision or **within twenty (20) calendar days** of receipt of another party's timely request for reconsideration. See 29 C.F.R. § 1614.405; Equal Employment Opportunity Management Directive for 29 C.F.R. Part 1614 (EEO MD-110), at 9-18 (November 9, 1999). All requests and arguments must be submitted to the Director, Office of Federal Operations, Equal Employment Opportunity Commission, P.O. Box 77960, Washington, DC 20013. In the absence of a legible postmark, the request to reconsider shall be deemed timely filed if it is

---

[3] Complainant failed to submit an affidavit as requested by the agency's investigator. In the FAD now on appeal, as an alternative ground for its decision the Agency dismissed the complainant because Complaint failed to cooperate with the investigator. Because we find on the merits here that Complainant has failed to prove discrimination, we do not address the question of whether that dismissal was proper.

[4] In her brief on appeal, Complainant intimates that she was improperly denied a reasonable accommodation. Any such claim is not before us on appeal. It was not raised with the EEO Counselor or set forth in the complaint. Nor was it encompassed by the claim we remanded for further processing in EEOC Appeal No. 0120070443.

received by mail within five days of the expiration of the applicable filing period. See 29 C.F.R. § 1614.604. The request or opposition must also include proof of service on the other party.

Failure to file within the time period will result in dismissal of your request for reconsideration as untimely, unless extenuating circumstances prevented the timely filing of the request. Any supporting documentation must be submitted with your request for reconsideration. The Commission will consider requests for reconsideration filed after the deadline only in very limited circumstances. See 29 C.F.R. § 1614.604(c).

## COMPLAINANT'S RIGHT TO FILE A CIVIL ACTION (S0610)

You have the right to file a civil action in an appropriate United States District Court **within ninety (90) calendar days** from the date that you receive this decision. If you file a civil action, you must name as the defendant in the complaint the person who is the official Agency head or department head, identifying that person by his or her full name and official title. Failure to do so may result in the dismissal of your case in court. "Agency" or "department" means the national organization, and not the local office, facility or department in which you work. If you file a request to reconsider and also file a civil action, **filing a civil action will terminate the administrative processing of your complaint.**

## RIGHT TO REQUEST COUNSEL (Z0610)

If you decide to file a civil action, and if you do not have or cannot afford the services of an attorney, you may request from the Court that the Court appoint an attorney to represent you and that the Court also permit you to file the action without payment of fees, costs, or other security. See Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.; the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 791, 794(c). **The grant or denial of the request is within the sole discretion of the Court.** Filing a request for an attorney with the Court does not extend your time in which to file a civil action. Both the request and the civil action must be filed within the time limits as stated in the paragraph above ("Right to File A Civil Action").

FOR THE COMMISSION:

*[signature]*

Carlton M. Hadden, Director
Office of Federal Operations

JAN 2 7 2011

Date

0120102400

## CERTIFICATE OF MAILING

**For timeliness purposes, the Commission will presume that this decision was received within five (5) calendar days after it was mailed.** I certify that this decision was mailed to the following recipients on the date below:

Paula K. Goldwyn
702 Laramie St
Manhattan, KS  66502


U.S. Postal Service (Western)
NEEOISO - Appeals
U.S. Postal Service
PO Box 21979
Tampa, FL  33622-1979


JAN 2 7 2011
---
Date


*PM*
---
Equal Opportunity Assistant

## Additional Information

*Question 10 (essential facts of the claim):*

Plaintiff was diagnosed with anxiety in early 2003 based on the hostile work environment created by her supervisor, the Wamego Postmaster ("Defendant"), who is now retired. In August 2003, Plaintiff's doctor wrote a letter indicating that she could not perform her job at her "current place of employment" and recommended "a change in work place" *(See Attachment A)* — but Defendant refused to assign Plaintiff to work anywhere else. Plaintiff exhausted her sick leave and annual leave accounts while being unable to work (in her "current place of employment") for an entire year.

In June 2004, Plaintiff's doctor filled out a Return to Work form — releasing her to return to work on 6/15/04 — in which he indicated "Anxiety and Depression" as her diagnosis and wrote "suggest she not work with the current Wamego Postmaster" under "Specify specific restrictions" *(See Attachment B)*. Although Defendant routinely loaned each of the other three Wamego clerks to nearby post offices, he refused to give Plaintiff any temporary reassignment to any other office, and began charging her as Absent Without Official Leave (AWOL). Plaintiff was therefore forced to return to work in June 2004 for the same supervisor (who accused Plaintiff of "trying to get something for nothing" and said that if she was going to play games he could play games, too).

Upon her return, Defendant cut Plaintiff's hours nearly in half. When Plaintiff asked for extra hours or more training or higher-level assignments, Defendant responded with "I'll think about it" or "we'll see" but never gave Plaintiff the opportunity for more income. Defendant even started working the window himself (which is a clerk's responsibility) so that the other clerks could take over Plaintiff's duties (e.g., distribution or markups) which cut her hours even further. Defendant would stand at the counter and constantly observe Plaintiff, blatantly taking copious notes on her every move, including timing her on various tasks and documenting the length of her restroom visits. Defendant told Plaintiff that she would never become eligible for FMLA (because he was never going to work her more than four hours a day) and angrily promised that he would "never let [Plaintiff] pull a stunt like that again" (referring to her extended medical leave).

Defendant often gave Plaintiff "the silent treatment" and encouraged her coworkers to not talk to her. Numerous times Defendant unexpectedly (and for no apparent reason) escorted Plaintiff to her car while leering at her. When Plaintiff tried to address the unacceptability of his behavior, Defendant would laugh at and mock her (e.g., saying "poor baby" or making "sad" faces like a clown). As time went on, the situation became even worse and began to take its toll on Plaintiff physically, often resulting in her inability to sleep more than three to four hours per night. After Plaintiff's coworkers expressed concern for her, Plaintiff printed out information sheets on Depression and Anxiety and gave them to her supervisor and all the clerks, hoping it would help them to better understand the grief that she was experiencing.

Plaintiff eventually contacted her supervisor's boss, the Manager of Post Office Operations (MPOO) in Topeka, usually phoning right from her supervisor's office and in the presence of her supervisor, who would stand there and laugh (as Plaintiff was telling the MPOO what was happening or leaving messages on his voicemail). This happened many times between September 2004 and January 2005, and the MPOO would tell Plaintiff "I'll talk to him," but the situation NEVER improved and Defendant NEVER stopped harassing Plaintiff.

The situation at work worsened during December 2004 and January 2005. Defendant became more mean-spirited and seemed to focus his efforts on isolating and embarrassing Plaintiff. Plaintiff once commented that "this shouldn't be happening" and asked Defendant why he hated her so much, to which Defendant replied "I don't hate you — I actually like you very much." Plaintiff told Defendant that he had "a funny way of showing it" and Defendant calmly responded "I know." On January 25, 2005, Plaintiff mailed a handwritten six-page complaint to the MPOO and eight other people or departments, including Gary Beasley, then-EEO Coordinator of the Central Plains District. Plaintiff entitled her letter "Subject: Hostile Work Environment in the Wamego, Kansas Post Office" *(See Attachment C)*.

Two days later, Defendant called a meeting with Plaintiff and her union steward, where the two men exchanged heated words about the situation and during which Plaintiff feared either or both of the men were about to become violent. Other events also occurred that week that led Plaintiff to conclude that the working conditions in Wamego had gotten so unbearable that she could no longer endure working there. That Saturday, Plaintiff notified her employer via the Postal Operations Administrator (the "Acting Postmaster" on duty) that she believed her health and well-being would be jeopardized if she continued working in Wamego, but that she was ready and willing to work in any other post office until the hostile working environment was dealt with.

In February, the MPOO sent Plaintiff a letter telling her that an investigation into her complaint was being conducted, and then in March, another letter requesting that Plaintiff contact his office "to make arrangements for the submission of any input you would like to add," which Plaintiff did, and their meeting was held on April 7, 2005. Meanwhile, Plaintiff applied for and was receiving unemployment compensation, but her employer had filed an appeal which resulted in an unemployment hearing being held on April 20, 2005. The MPOO testified under oath at the hearing that the investigation was still ongoing and that no conclusions had been made and "no official action has ever been taken." On April 21, 2005, the day following the unemployment hearing, Defendant (having previously received the MPOO's concurrence on the Disciplinary Action Proposal form signed and dated by both men on April 13, 2005) issued Plaintiff a "Notice of Removal" *(See Attachment D)*.

In his March 2009 EEO Investigative Affidavit, Defendant indicated that after police found undelivered mail in the vehicle of another employee (a male) of Defendant's, the Defendant "gave him the option of quitting or be removed." In addition, after another employee of Defendant's failed to report for work because he was incarcerated as a result of being charged with (and later convicted of) rape, Defendant also gave THAT employee (a male) "the option of quitting or be removed"! Does it come as any surprise that Defendant never afforded Plaintiff (a female) that same opportunity?